## Tina M. CLARK

v.

## MAINE MEDICAL CENTER, et al.

Supreme Judicial Court of Maine.

Argued May 3, 1989.

Decided June 1, 1989.

---

Dennis Levandoski (orally), Kettle, Carter, Levandoski, Anderson & Sharon, Portland, for plaintiff.

Gerald F. Petruccelli (orally), Petruccelli, Cox & Martin, Portland, for defendants.

Before McKUSICK, C.J., and
ROBERTS, WATHEN, GLASSMAN,
CLIFFORD, HORNBY and COLLINS,
JJ.

COLLINS, Justice.

Plaintiff Tina Clark, individually and as the personal representative of the estate of her husband David Clark, appeals to this court the dismissal by summary judgment of her claim arising out of David Clark's suicide. Plaintiff sued in Superior Court (Cumberland County) for wrongful death and emotional distress allegedly caused by the negligence of Defendants Maine Medical Center (MMC) and John Prairie, M.D. The Superior Court (*Cole, J.*) granted Defendants' motion for summary judgment on the grounds that 1) Defendants are immune under the discretionary function immunity provision of the Maine Tort Claims Act, 14 M.R.S.A. § 8111(1)(C) (1980 & Supp.1987); and 2) no genuine issue of material fact exists as to whether Dr. Prairie's actions were the legal cause of Plaintiff's injuries. We affirm on the former ground.

I.

On May 11, 1983, David Clark committed suicide. Two days earlier he had arrived at his parent's home, told his mother, Sally Clark, that he was "bummed out", "sick", "needed some help", and requested that she take him to the Augusta Mental Health Institute (AMHI). Upon telephoning AMHI Sally Clark learned that AMHI procedures required that they first go to a local hospital. Before leaving with Sally for MMC, David changed his mind several times about going. On the way to the hospital David jumped out of the car as Sally slowed down to stop at a red light. During the intake procedures at the hospital David gave the clerk a false social security number and address. While waiting in a guarded patient waiting room until Dr. Prairie arrived, David expressed regret about being there and a desire to leave. In response to Dr. Prairie's inquiry concerning David's problem, David stated that he was "depressed and down in the dumps", and that he "had had a bad day." He elaborated that his wife had thrown him out of their home, he was in trouble with the law, and he had lost his job, ascribing these problems to his excessive use of alcohol. After Sally left the room at Dr. Prairie's request the discussion focused on David's alcohol abuse. David told Dr. Prairie that he had previously been hospitalized at AMHI, that he was familiar with local detoxification and alcohol abuse programs, and that he was very concerned about losing connection with his children. In response to Dr. Prairie's inquiries, David denied that he was homicidal or suicidal, that he had a history of violent behavior, and

that he either needed or wanted hospitalization that night. Upon rejoining Sally, Dr. Prairie informed her that he and David had agreed that David needed to address his alcohol problems and that David would be fine. David agreed that he was feeling better. Sally stated that she wanted David admitted to AMHI so that he would not get in trouble again. Dr. Prairie informed her that that was not a basis for admission, and David stated that he did not want to be admitted. David and Sally then left the hospital.

## II.

In reviewing the grant of a summary judgment, we view the evidence in the light most favorable to the losing party, giving that party "the full benefit of all favorable inferences that may be drawn." *Kennebunk Sav. Bank v. West*, 538 A.2d 303, 304 (Me.1988) (quoting *Lidstone v. Green*, 469 A.2d 843, 845 (Me.1983)).

■ The Maine Tort Claims Act provides a discretionary function immunity to government employees for conduct within the scope of their employment:

> **1. Immunity.** Employees of governmental entities shall be personally immune from civil liability for the following:
>
> . . . .
>
> C. The performance or failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused; and whether or not the statute, charter, ordinance, order, resolution, regulations or resolve under which the discretionary function or duty is performed is valid.

14 M.R.S.A. § 8111(1)(C). The Act defines "employee" as "a person acting on behalf of the governmental entity in any official capacity, whether temporarily or permanently, and whether with or without compensation from local, state or federal funds . . . ." 14 M.R.S.A. § 8102(1) (1980). Whether allegedly wrongful conduct is a "discretionary function" depends upon the actual conduct at issue and its relationship to the performance of some legislatively imposed duty. *Darling v. Augusta Mental Health Inst.*, 535 A.2d 421, 427 (Me.1987).

■ We recently held that a psychiatrist employed by Maine Medical Center who conducted an examination for purposes of involuntary commitment pursuant to 34 M.R.S.A. § 2333 fell within the protection afforded by 14 M.R.S.A. § 8111(1)(C):

> Even though Dr. Herst is not employed by a state mental hospital, he is acting in an official capacity on behalf of the State when performing the task of determining, for involuntary commitment purposes, whether a 'person is a mentally ill individual and because of his illness, poses a likelihood of serious harm.' He acts under the sole authority of the statute, and his function is 'central to effecting the State's important responsibilities of protecting the public and treating the mentally ill.'

*Taylor v. Herst*, 537 A.2d 1163, 1165 (Me. 1988) (quoting *Darling v. Augusta Mental Health Inst.*, 535 A.2d at 428).

The case at hand presents a similar situation. Like Dr. Herst in *Taylor*, Dr. Prairie is employed by Maine Medical Center and not a state mental hospital. Also like Dr. Herst, Dr. Prairie acted in an official capacity on behalf of the State in examining David to determine whether he should be either involuntarily committed or voluntarily admitted to AMHI. Plaintiff seeks to distinguish *Taylor* on the grounds that Dr. Prairie did not examine David pursuant to any statute and thus was not exercising a discretionary function.[1] It is clear from the record, however, that Sally and David went to MMC solely because AMHI procedures required it, and that the only diagnosis and treatment sought was admission to AMHI. *See Darling v. Augusta Mental Health Inst.*, 535 A.2d at 427–28.

Because we find that the Defendants are immune pursuant to the Maine Tort Claims Act, we find it unnecessary to address the

---

**1.** The Plaintiff in *Taylor* alleged that the defendants were negligent in failing to determine that he required involuntary commitment pursuant to 34 M.R.S.A. § 2333 (1978). In the present case, plaintiff alleges that Dr. Prairie "failed to properly examine and treat decedent."

alternative ground of causation on which the Superior Court granted summary judgment.

The entry is:

Judgment affirmed.

All concurring.